Eastern District of Kentucky
F I L E D

MAY 0 3 2006

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

CIVIL ACTION NO. 04-398-GWU

JANICE M. COLLINS,                                    PLAINTIFF,

VS.                        **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,              DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of her applications for Disability Insurance Benefits (DIB) and Supplemental

Security Income (SSI). The appeal is currently before the Court on cross-motions

for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.   Is the claimant currently engaged in substantial gainful activity?
     If yes, the claimant is not disabled. If no, proceed to Step 2.
     See 20 C.F.R. 404.1520(b), 416.920(b).

2.   Does the claimant have any medically determinable physical
     or mental impairment(s)? If yes, proceed to Step 3. If no, the
     claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3.   Does the claimant have any severe impairment(s)--i.e., any
     impairment(s) significantly limiting the claimant's physical or
     mental ability to do basic work activities? If yes, proceed to

1

Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6.    See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.    If no, proceed to Step 7.    See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.    See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.  Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial

2

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

3

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

6

may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Janice M. Collins, a 51-year-old woman with a high school education and unskilled work experience, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of asthma, chronic obstructive pulmonary disease, allergies, finger and thumb arthritis, knee crepitus, and obesity. (Tr. 437). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that Mrs. Collins retained the residual functional capacity to perform a significant number of jobs existing in the economy and, therefore, was not entitled to benefits. (Tr. 441-44). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if she were capable of "light" level exertion, with an ability to sit, stand, and/or walk for up to six hours in an eight-hour day, but with a "sit/stand option," and also had the

7

Collins

following non-exertional impairments. (Tr. 730).[1] She: (1) could not climb ladders, ropes, or scaffolds; (2) could occasionally bend, kneel, crouch, crawl, and stoop; (3) should avoid even moderate exposure to respiratory irritants, including extreme temperatures, high humidity, pets, pollen, fumes, odors, dust, gases, perfumes, cigarette smoke, soldering fluxes, solvents, cleaners, and chemicals; and (4) would be limited to work requiring no more than "frequent" gripping of objects with either upper extremity. (Tr. 730-1). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Id.).

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence. The plaintiff had filed a prior application for benefits which was denied by an ALJ on October 23, 2001 (Tr. 12-17), and affirmed by the undersigned on May 30, 2003 (Tr. 482-93). The ALJ in the present case accepted that, under the standard set out in Drummond v. Commissioner of Social Security, 126 F.3d 837 (6th Cir. 1997), there was new and material evidence which warranted a finding of greater restrictions in connection with the current applications. (Tr. 438).

---

[1]The ALJ ultimately did not find that a sit/stand option was necessary. (Tr. 441).

8

However, the ALJ rejected restrictions on walking, sitting, and standing given by the plaintiff's treating physician, Dr. Vandita Samavedi. The plaintiff challenges this determination on appeal.

As noted in the Court's May 30, 2003 Memorandum Opinion reviewing the prior application, Dr. Samavedi began treating the plaintiff in October, 2000, with an initial assessment including asthma, acute pharyngitis, and seasonal allergies and rhinitis. (Tr. 160-1, 490-1). After a total of three office visits, at which it was noted that the plaintiff was doing fairly well although she complained of severe bouts of coughing when around almost all environmental irritants, Dr. Samavedi had written a letter on June 14, 2001 indicating that Mrs. Collins could not work in an environment exposing her to external allergens, strong odors, or perfumes; the letter stated that these restrictions would prevent her from obtaining any gainful employment and the problem "appear[ed]" to be a permanent and total disability. (Tr. 147, 491). Based on the evidence garnered at that time, the Court found that the prior ALJ's rejection of the physician's impermissible vocational conclusions, and his acceptance of her opinion that Mrs. Collins could not return to her past work or to a job involving exposure to excessive environmental irritants was supported by substantial evidence. (Tr. 491-3).

In connection with the present applications, more records from Dr. Samavedi were submitted, including office notes showing a number of visits in late 2001 for

9

respiratory infections, acute bronchitis, chronic cough, and frequent flareups of asthma. (Tr. 627-31). Dr. Samavedi completed a "Pulmonary Residual Functional Capacity Questionnaire" on November 20, 2001, listing her findings as asthma, chronic obstructive pulmonary disease, and gastroesophageal reflux disease, with clinical findings including rhonchi, a prolonged expiratory phase, hyperaeration on a chest x-ray, and a pulmonary function test showing a moderate obstruction even on an inhaler. (Tr. 672). Dr. Samavedi indicated that her patient would have attacks every two to three months, which would leave her incapacitated for one week, and these would "often" be severe enough to interfere with attention and concentration. (Tr. 673). She also listed side effects of the plaintiff's medications as including tremulousness, shakiness, and nervousness. (Tr. 674).[2] In terms of functional restrictions, Dr. Samavedi indicated that Mrs. Collins could walk for one city block, sit for 15 minutes, and stand for 15 minutes for a total of about two hours a day for each. (Id.). She would also have to take unscheduled breaks throughout the day. (Tr. 675). She would be capable of lifting up to 20 pounds occasionally, but would need to avoid all exposure to cold, heat, fumes, smoke, soldering flux, solvents, chemicals, pets, and pollen. (Tr. 675). She was also likely to be absent more than three times a month. (Id.).

[2]Mrs. Collins denied medication side effects at the most recent hearing. (Tr. 713).

10

Dr. Bobby J. Kidd conducted a consultative physical examination of the plaintiff on February 26, 2002. Mrs. Collins stated that she still had wheezes despite her breathing treatments and was incapacitated by shortness of breath, and coughing. (Tr. 614). In fact, she had a coughing episode in Dr. Kidd's office as a result of breathing the perfume from potpourri in his waiting room. (Id.). On examination, the plaintiff weighed 204 pounds with the height of five feet three inches, and the examination was essentially normal other than "musical rales" over both the anterior and posterior lung fields with expiratory wheezes and some rhonchi, along with a finding of crepitus in both knees. (Tr. 615-17). Dr. Kidd's impression was "asthma," and he did not list any functional restrictions or initial his report to indicate that he had reviewed any laboratory studies. (Tr. 618).

The same day, Dr. Bruce Guberman conducted a pulmonary function test showing that the plaintiff had an FEV1 only 50 percent of predicted value prior to bronchodilation, rising to 79 percent following bronchodilation. (Tr. 619). Dr. Guberman's interpretation was that the plaintiff had "severe" chronic obstructive pulmonary disease and "mild" restrictive pulmonary disease with improvement after the use of bronchodilators. (Id.). No functional restrictions were given.

A non-examining state agency physician, Dr. James Ross, indicated on April 25, 2002 that the plaintiff's impairment was less than "severe," citing a report by Dr.

11

Kidd, and no other evidence. He did not comment on Dr. Samavedi's notes or opinions.

Dr. Samavedi completed a physical residual functional capacity form on April 26, 2002, which limited the plaintiff to sitting one hour, standing one hour, and walking one hour "with rests" in an eight-hour day, lifting 50 pounds occasionally and 20 pounds frequently, occasionally climbing, having a limitation on the use of her right leg for foot controls, having a total restriction on exposure to marked changes in temperature and humidity and exposure to dust, fumes, and gases, and a "moderate" restriction on working at unprotected heights and being around moving machinery. (Tr. 622). Next to a line marked "comments" Dr. Samavedi wrote "please see attached letter." (Id.). There does not appear to be any letter attached, however.

The ALJ partially rejected Dr. Samavedi's assessments, on the grounds that they were not well supported by her objective findings. (Tr. 439-40). Specifically, although accepting limitations on pulmonary irritants, the ALJ noted that Dr. Samavedi had not treated Mrs. Collins for any right leg problems. The ALJ apparently rejected the other limitations because she felt that the plaintiff's asthma was now well-controlled with medication, though she felt that the evidence supported some restrictions on the plaintiff's exertional abilities. (Tr.. 440). Nevertheless, Dr. Samavedi was a treating source who cited objective, underlying evidence for

Collins

impairments and was uncontradicted by any other examiner or by any reviewer who had access to all the evidence and gave a clear reason for his difference of opinion. See Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994). While the Court recognizes that the evidence for disability is not overwhelming, this is a case in which at least an opinion from a medical expert should have been obtained before rejecting the treating source's opinion.[3]

The decision will be remanded for further consideration.

This the ___3___ day of May, 2006.

G. WIX UNTHANK
SENIOR JUDGE

---

[3]The evidence cited by the ALJ includes brief office notes from Dr. Samavedi's successor as the plaintiff's treating physician, Dr. Mark Adams, which the ALJ cited as suggesting that the plaintiff did not have recurrences of asthma as frequently as Dr. Samavedi suggested (Tr. 654-9), does not contain any new findings or opinion regarding functional restrictions. Nor did any agency physician have an opportunity to review it.

13